UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

BETTY WARNOCK, )
 )
    Plaintiff, )
 )
v. ) Case No. CV412-308
 )
SAVANNAH-CHATHAM COUNTY )
PUBLIC SCHOOL DISTRICT,[1] )
 )
    Defendant. )

## REPORT AND RECOMMENDATION

Betty Warnock, a school nurse at Coastal Middle School in Savannah, Georgia, claims that she was passed over for a promotion to lead nurse for the Savannah-Chatham County Public School District in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.* (Doc. 1 (complaint)[2]; doc. 24-1 at 47

---

[1] Warnock named the "Chatham Board of Education" as the defendant. (Doc. 1.) Defendant answered and clarified that the proper defendant is the "Savannah-Chatham County Public School District." (Doc. 9.) The Court has amended the caption above, the Clerk shall amend the docket accordingly, and all subsequent filings shall conform.

[2] Warnock has submitted an out-of-time "motion for joinder of claims" in which she seeks to add a claim for retaliation based upon defendants' failure to

(EEOC Charge of Discrimination).) Proceeding *pro se*, she alleges that the position was filled by someone younger who had less education and experience. (Doc. 2 at 4.) Defendant moves for summary judgment. (Doc. 24.) Its motion should be granted and this case should be dismissed.

Under Federal Rule Civil Procedure 56(a), the Court must grant summary judgment where the movant "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter

---

promote her to the Lead School Nurse position after it became available in 2013. (Doc. 21.) She also insists that her claims should include the District's failure to promote her in 2007. (Doc. 1.) The EEOC right-to-sue letter addresses only the 2008 hiring decision. (Doc. 24-1 at 47.) The ADEA requires a plaintiff to exhaust all available administrative remedies prior to filing a lawsuit. 29 U.S.C. § 626(d)(2); *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1238 (11th Cir. 2004) (explaining ADEA requirement). Because these ADEA claims constitute "new act[s] of discrimination" not exhausted in her administrative charge, Warnock is barred from raising them. *Giles v. BellSouth Telecomm., Inc.*, 542 F. App'x 756, 759 (11th Cir. 2013).

Even if not barred for lack of exhaustion, the retaliation claim fails because it is untimely. Warnock was aware of the basis for the retaliation claim in October 2013, but she failed to move to add it as a claim for relief until May 6, 2014. (Doc. 21.) The filing comes more than two months after the scheduling order's deadline for submitting amended pleadings. (Doc. 17.) Such late-filed motions are usually construed as motions to amend the scheduling order under Fed. R. Civ. P. 16(b). *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1231-32 (11th Cir. 2008) (applying Fed. R. Civ. P. 16(b)'s "good cause" scheduling order modification standard before applying Rule 15(a)'s amendment standard); *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (same); *Alexander v. AOL Time Warner, Inc.*, 132 F. App'x 267, 269 (11th Cir. 2005) (same). Rule 16(b) requires that parties show good cause for modifying the scheduling order; to proceed directly to the merits of an untimely filed motion "would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Sosa*, 183 F.3d at 1419. Warnock has not even attempted to make such a showing.

of law." *Id.* A genuine dispute as to a material fact can only be found "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation omitted). The movant meets this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23; *see also* Fed. R. Civ. P. 56(c)(1). After the movant satisfies this requirement, the burden shifts to "the adverse party [who] must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48 (emphasis in original). The non-moving party "must do more than simply show that there is some

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). And "[a]ll reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant, but an inference based on speculation and conjecture is not reasonable." *Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir. 1985) (citation omitted).

The basic facts here are not in dispute. Warnock was one of four qualified applicants selected to be interviewed for the school district's lead nursing position, which included a posting to the Woodville Tompkins Technical and Career High School. (Doc. 24 at 1.) A five-member interview panel -- Tammy Perkins, a pupil personnel analyst; Jeffery Baker, a school social worker; Christina Chancey, a school nurse; Carol Gamble, the "Center Leader" for Woodville Tompkins; and Marsha Pierce, an outside school health consultant -- met with each applicant separately and focused the interview on the following eight issues: (1) introduce yourself and discuss your personal characteristics; (2) how would a supervisor describe you; (3) what administrative experience have you had in nursing, and did you enjoy it; (4) explain an immunization audit process; (5) give examples of where you demonstrated leadership;

4

(6) have you dealt with controversial situations, and how did you overcome them; (7) discuss your strengths and how they would apply to the lead nurse position; and (8) what are your top three priorities for the year. (Doc. 24-2 (Perkins aff.); doc. 24-3 (Baker aff.); doc. 24-4 (Chancey aff.); doc. 24-5 (Gamble aff.); doc. 24-6 (Pierce aff.).) Defendant only offered Warnock's interview reports from four members of the panel, but those interviewers uniformly found that Warnock's answers to sections 5 and 6 were poor. On a scale of one to five, the highest score she received was a "two" on section 5; the rest of the ratings on sections 5 and 6 were "ones" across the board. (Doc. 24-2 at 8; doc. 24-3 at 36; doc. 24-4 at 8; doc. 24-5 at 8.) Additionally, Gamble felt that she avoided answering portions of certain questions. (Doc. 24-5 (Gamble's notes stating that Warnock did not answer "part 2" of section 3 or offer any outcomes in section 6.) Based on her relatively poor interview performance, every interviewer ranked Warnock third out of the four candidates. (Doc. 24-2 at 14 (candidate rankings); doc. 24-6 at 4 (Pierce's overall rankings).) The interview panel recommended the top scoring candidate, Patricia Hilliard, to the school district's superintendent, Thomas Lockamy. (Doc. 24-7 (Lockamy aff.).) Lockamy recommended Hilliard's appointment as

lead nurse to the School Board, which approved the recommendation. (*Id.* at 2-3.) Hilliard was either 42 or 43 at the time of the interview. (Doc. 24-8 at 2.) Warnock was either 54 or 55.[3] (Doc. 24-1 at 8.)

Since Warnock has not alleged any direct or statistical evidence of discrimination -- e.g., someone's admission that defendant was looking for a younger candidate or the unstated but statistically obvious hiring policy of bringing in younger workers -- she must rely upon circumstantial evidence from which an inference of intentional discrimination may be drawn. *E.g., Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1313 (11th Cir. 1994). Defendant admits that Warnock's nursing degrees and accreditations, along with her 24 years of service as a school nurse, qualified her for the position. (Doc. 24 at 16.) It thus concedes that Warnock has made out a *prima facie* claim of discrimination.[4] (*Id.*) Defendant, then, has an opportunity to articulate a legitimate,

---

[3] The exact birthdates are redacted for privacy reasons. Only the birth years have been made available.

[4] Since Warnock relies on circumstantial evidence of discrimination, the Court applies the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a *prima facie* case of discrimination in the failure-to-promote context, the Warnock was required to show that she was (1) a member of the protected age group, (2) subjected to an adverse employment action, (3) qualified to do the job, and (4) a younger individual outside of the protected class received the promotion. *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000).

6

nondiscriminatory reason for the challenged employment action as an affirmative defense to liability. *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008). The plaintiff bears the ultimate burden of proving discrimination by a preponderance of the evidence, so she must demonstrate that the reason provided by the employer is a pretext for prohibited conduct. *Id.*

According to defendant, it chose Hilliard because of her superior interview performance. (Doc. 24.) Having provided a "legitimate, non-discriminatory reason" for its actions, Warnock must show that the reason is a mere pretext for discriminatory conduct. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981) (if a legitimate, nondiscriminatory reason is articulated by defendant, then plaintiff has the ultimate burden of proving the reason to be a pretext). This is a difficult burden to shoulder since "an ADEA plaintiff must prove 'but-for' causation -- not mere proximate causation." *Sims v. MVM, Inc.*, 704 F.3d 1327, 1337 (11th Cir. 2013). Thus, to prevail, Warnock must show that but for the decision-makers' discriminatory animus, she would have been selected for the position. *Id.*; *see Springer v. Convergys Customer Mgmt. Grp., Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (a proffered reason is not

pretext for discrimination "unless it is shown both that the reason was false, and that discrimination was the real reason").

In her response, Warnock focuses almost entirely upon her admittedly excellent credentials, though she grudgingly admits that Hilliard "barely met the minimum requirements for the job posting." (Doc. 26 at 2.) Seniority and credentials are not everything:

> Personal qualities . . . factor heavily into employment decisions concerning supervisory or professional positions. *See Sengupta v. Morrison–Knudsen Co.*, 804 F.2d 1072, 1075 (9th Cir. 1986) (racial discrimination alleged in layoff from position as engineer) ("Indeed, in many situations [subjective criteria] are indispensable to the process...."); *Risher v. Aldridge*, 889 F.2d 592, 597 (5th Cir. 1989) (sex discrimination alleged in failure to promote) ("Subjective criteria necessarily and legitimately enter into personnel decisions involving supervisory positions." (citation omitted)). Traits such as "common sense, good judgment, originality, ambition, loyalty, and tact" often must be assessed primarily in a subjective fashion [during an interview], *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 991, 108 S. Ct. 2777, 2787, 101 L.Ed.2d 827 (1988), yet they are essential to an individual's success in a supervisory or professional position.

*Chapman v. AI Transp.*, 229 F.3d 1012, 1033–35 (11th Cir. 2000) (en banc). The Eleventh Circuit has thus repeatedly held that poor interview performance, even though it is necessarily subjective, constitutes a legitimate reason for failing to hire or promote someone. *E.g.*, *Porter v. Am. Cast Iron Pipe Co.*, 427 F. App'x 734, 736-37 (11th Cir. 2011); *Riley v.*

*Birmingham Bd. Of Educ.*, 154 F. App'x 114, 117 (2005). Given Warnock's consistently poor interview results here, her "experience and advanced degree . . . [did] not make her such a superior candidate that no reasonable person, in the exercise of impartial judgment, could have chosen [Hilliard] over her." *Haugabrook v. Cason*, 518 F. App'x 803, 808 (11th Cir. 2013) (Table) (citing *Springer*, 509 F.3d at 1349).

Warnock contends that the interview was effectively a sham since defendant has consistently provided the position to younger employees. (Doc. 26 at 3.) Natasha Harris-Haggan, who had the lowest total interview score of all of the applicants for the 2008 opening, had actually been lead nurse in 2007, and she was also Warnock's junior by seven years. (Doc. 24-8 (Holliday aff.); doc. 26 at 3.) Moreover, Deborah Charles, Warnock's senior by two years, was also passed over for the promotion. (Doc. 26 at 3.)

Again, Warnock is fixated upon years of service, education, and experience as the sole benchmarks for promotion determinations. Simply pointing out that other employees, younger than her, have maintained supervisory positions in the school district in the recent past hardly shows that the School Board is excluding candidates based solely upon age. The

9

affidavits of every interviewer show the opposite. Moreover, had Hilliard declined the position, the evidence of record shows that the position would have gone to Deborah Charles, the oldest of all of the candidates.

Warnock also states that the School Board failed to follow its own procedures. (*Id.* at 1-2.) She contends that the interview was to be only one of several factors, including the application, licensure and certification, relevant experience, personal interview, education and training, and background checks. (*Id.* at 2 & attach.) Additionally, "if the abilities and qualifications of two or more internal applicants are deemed to be equal, the applicant with seniority in the school district shall be appointed to the position." (*Id.* at 1 & attach.)

The regulations assign no explicit weight to the listed factors. In any event, this was not a photo-finish situation. The School Board found that Hilliard was actually *more* qualified for the lead nurse position than Warnock after the interview phase of the hiring process. The interviewers received and reviewed each candidate's applications before the interviews, and despite Hilliard's relative inexperience as a school nurse, the interviewers consistently found that she was the best fit to perform the job. (Doc. 24-2 at 2; doc. 24-3 at 2; doc. 24-4 at 2.) They were

generally impressed with Hilliard's past job as a co-owner and director of a technical CNA and phlebotomy training school. (Doc. 24-2 at 6; doc. 24-3 at 34; doc. 24-5 at 6.)

Warnock's arguments in response simply do not show that defendant's proffered reason was so weak, implausible, inconsistent, or contradictory that a reasonable fact finder would find it unworthy of credence. *Haugabrook*, 518 F. App'x at 807. She has failed to offer any compelling evidence suggesting that she would have received the promotion but for defendant's age-based discrimination. Accordingly, defendant's motion for summary judgment (doc. 24) should be **GRANTED** and this case should be **DISMISSED**.

**SO REPORTED AND RECOMMENDED** this 12Th day of August, 2014.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA